2010 Ark. App. 419

**Gypsy TIMMONS, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, and Minor Child, Appellees.**

**No. CA 10–71.**

Court of Appeals of Arkansas.

May 12, 2010.

Tabitha Baertels McNulty, Leah Beth Lanford, Arkansas Public Defender Commission, Little Rock, AR, for appellant.

Keith L. Chrestman, Chrestman Group, PLLC, Jonesboro, AR, for appellee.

RITA W. GRUBER, Judge.

Gypsy Timmons appeals the November 2, 2009 order of the Sebastian County Circuit Court that terminated her parental rights to her twenty-two-month-old child. The order of the circuit court stated that Timmons's parental rights were terminated pursuant to the provisions of Ark.Code Ann. § 9–27–341 and found that it was contrary to the juvenile's best interests, health and safety, and welfare to return her to Timmons's parental care and custody. Additionally, the order noted the Choctaw Nation's concurrence that the requirements had been met under the Indian Child Welfare Act (ICWA) and noted that the expert of the Choctaw Nation of Oklahoma recommended termination of parental rights.[1]

Timmons brings one point on appeal, challenging the sufficiency of the evidence to support the circuit court's finding that terminating her parental rights was in her child's best interest under Arkansas law. Her arguments focus on the trial court's findings that she had ongoing drug problems and that the child would be at risk of psychological and physical harm if returned to her. We affirm.

Arkansas law requires that a termination of parental rights be based upon a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of i) the likelihood that the juvenile will be adopted if the termination petition is granted; and ii) the potential harm that returning the child to the custody of the parent would cause, specifically addressing the effect on the health and safety of the child. Ark.Code Ann. § 9–27–341(b)(3)(A) (Repl.2009).

There must also be a finding by clear and convincing evidence of one or more grounds under subsection (b)(3)(B), including:

(i)(a) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

. . . .

(ii)(a) The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile.

. . . .

(vii)(a) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.

Ark.Code Ann. § 9–27–341(b)(3)(B) (Repl. 2009).

The circuit court announced its findings in this case "beyond a reasonable doubt." First, it found that returning Timmons's child to her parental care and custody was contrary to the child's best interests, health and safety, and welfare. We summarize further findings by the court that

1. The ICWA is codified at 25 U.S.C. § 1901 et seq.

are pertinent to the arguments Timmons now makes:

a) the juvenile had been out of the mother's home and custody for seventeen and one-half months, approximately eighty percent of the child's life;

b) no evidence indicated that, if given additional time, the child could be safely returned to a parent within a reasonable period of time as viewed from the perspective of the juvenile;

c) throughout the case, DHS had made reasonable and active efforts to provide Timmons with services designed to rehabilitate herself, the circumstances that caused the child to be placed in foster case, and circumstances that had subsequently arisen that prevented the child from being safely returned to the mother;

d) although Timmons partially complied with the court's orders and the case plan at one point, she did not have stable housing—living in at least ten places the past year and a half, acquiring her current residence a month ago, and spending only one night there; was recommended for residential, not out-patient, drug treatment; entered residential treatment twice but left both times before completion; had positive drug screens after completing an out-patient program; she was incarcerated twice for new behaviors since the case began; did not have stable employment or income; did not have a driver's license or reliable means of transportation; was currently pregnant by a man who was not contributing to her stability; had not paid child support as ordered and testified that her total income for the first nine months of the year was approximately $2000; and had not attended counseling as recommended by her psychological evaluation and ordered by the court;

. . .

h) the juvenile would be at risk of harm both psychologically and physically if returned to a parent; and

j) the juvenile was adoptable, and foster parents in her kinship foster placement were interested in her adoption.

The court also found that DHS had made reasonable and active efforts throughout the case to reunite the family. On these findings, Timmons's parental rights were terminated.

*Burden of Proof and Standard of Review*

The circuit court employed a "beyond a reasonable doubt" burden to findings a)—j) and others that supported termination of parental rights under Ark.Code Ann. § 9–27–341 rather than the "clear and convincing" burden required by the Code. A separate provision of the ICWA prohibits termination of parental rights to an Indian child "in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, to determine that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C.A. § 1912(f) (West 2006).

In *Sartin v. State*, 2010 Ark. 16, 362 S.W.3d 877, our supreme court differentiated the standards of review in actions terminating parental rights under Arkansas law, where disputed facts must be proven by clear and convincing evidence, and in criminal actions, which require proof beyond a reasonable doubt. *Sartin* noted that parental-rights-termination cases determined under Arkansas law are reviewed de novo and are overturned only if the court's decision that a disputed fact was established by clear and convincing evidence was clearly erroneous, but questions in criminal actions are reviewed under the more deferential substantial-evi-

dence standard, considering only evidence that supports a conviction and overturning it only if supporting substantial evidence is lacking. 2010 Ark. 16, at 6, 362 S.W.3d at 879. *Sartin* did not involve the termination of parental rights to an Indian child.

Arkansas has not applied the substantial-evidence standard of review in an ICWA case, as has been done in other jurisdictions. *Compare In re Interest of A.P.*, 25 Kan.App.2d 268, 961 P.2d 706 (1998) (employing same standard of review to 25 U.S.C. § 1912(f)'s requirement of "beyond a reasonable doubt" as that used to review sufficiency of the evidence in a criminal case) *with Burks v. Ark. Dep't of Human Servs.*, 76 Ark.App. 71, 61 S.W.3d 184 (2001) (acknowledging different burdens of proof under state termination-of-parental-rights statutes and 25 U.S.C. § 1912(f), and holding that the chancellor did not err in finding DHS had proven "all the necessary elements of the case beyond a reasonable doubt"). Nor have we specified that a dual burden of proof is required in a proceeding for termination of parental rights that involves the ICWA. *Cf. Valerie M. v. Arizona Dep't of Econ. Sec.*, 219 Ariz. 331, 198 P.3d 1203, 1207 (2009) (opining that Congress did not intend to apply the reasonable-doubt standard to state-law findings and noting that almost every state court considering the issue has concluded "ICWA allows states to specify the standard of proof for state-law findings distinct from the findings required by ICWA"); *In re Interest of D.S.P.*, 166 Wis.2d 464, 480 N.W.2d 234 (1992) (citing *Matter of J.R.B.*, 715 P.2d 1170, 1172 (Alaska 1986) for conclusion that dual burden of proof was appropriate if mandated by the ICWA and state law, and holding that the federal "beyond reasonable doubt" standard was not required to prove abandonment under Wisconsin law); *Matter of Bluebird*, 105 N.C.App. 42, 411 S.E.2d 820 (1992) (dual burden of proof for state and federal provi-

sions must be satisfied separately: state's grounds for termination must be supported by clear and convincing evidence, while federal law requires evidence justifying termination beyond a reasonable doubt).

■ Timmons challenges only findings under state law. Although the circuit court made these findings under the beyond-a-reasonable-doubt burden of proof, Timmons properly recites that the required burden of proof is clear and convincing evidence. We are able to proceed to the merits of her arguments because the appropriate standard of proof was necessarily encompassed by the circuit court's employment of the higher burden. We think, however, that the better practice for the circuit court would have been to employ a dual burden of proof to separate sets of findings under Ark.Code Ann. § 9–27–341 and 25 U.S.C.A. § 1912(f).

### Point on Appeal

Timmons contends that the circuit court erred in finding that it was in her child's best interest to terminate her parental rights. She disputes its finding that DHS proved its allegations under Ark.Code Ann. § 9–27–341 by clear and convincing evidence, challenging the trial court's determination that potential harm to the child's health and safety could be caused by returning her to Timmons's custody.

On April 6, 2008, DHS assumed an emergency, seventy-two-hour hold of Timmons's four-month-old child because the child had no other legal caregiver when the mother was arrested and there was concern about the child's physical condition. The supporting affidavit stated that Timmons was arrested for fraudulent use of a credit card; she tested positive for methamphetamine and THC, claimed to be taking Doracets and Loratabs, but did not

produce prescriptions; and the child was very dirty, had soiled and stained clothing, and was diagnosed with an upper respiratory infection after being taken to the emergency room for a fever and cough. The court issued an order for emergency custody and set a probable-cause hearing for April 15, 2008. In the probable-cause order of April 18, 2008, the court found that the emergency conditions that necessitated removal of the child from the mother's custody continued and that it was contrary to the child's welfare to be returned to the home.

A dependency-neglect hearing was conducted on June 2, 2008. By order of October 10, 2008, Timmons's child was adjudicated dependent-neglected as a result of environmental neglect and her mother's abuse of drugs, and the goal of reunification was established. Timmons was ordered to obtain and maintain stable and appropriate housing, employment, income, and transportation; complete parenting classes and obtain her driver's license; undergo a psychological evaluation and any recommended treatment; submit to a drug and alcohol assessment and to any recommended follow-up treatment; submit to random drug screens requested by DHS; comply with terms and conditions of her criminal sentence; visit her child regularly; and pay $25 weekly child support.

In a permanency planning order of April 7, 2009, the goal of the case was changed from reunification to termination of parental rights and adoption. The court found that Timmons had not complied with the case plan and orders of the court: she had not successfully rehabilitated herself regarding her drug addiction; lacked stable housing, employment, income, and transportation; and had not completed counseling or parenting classes.

The termination hearing was held on September 25, 2009. There was testimony that Timmons failed to regularly attend counseling or to successfully complete counseling, took a year to finish nine weeks of parenting classes, and failed to undergo recommended in-patient drug treatment. Her caseworker suspected that she continued to use drugs. Three days before the hearing, seven-months-pregnant Timmons tested positive for methamphetamine at DHS, and the test was sent off for further testing. She requested a separate test from her probation officer because of the initial result, and that test also was positive for methamphetamine. She continued to take Prozac and Hydrocodone. She testified that she was arrested twice after the case began, was incarcerated fifteen days on the credit-card charge, violated the term of her probation that she report her addresses, had become pregnant twice, and owed almost $3000 on criminal fines. She admitted that she did not have her own transportation, her housing and income were not stable, her employment had been almost nil, she "got $324 a month social security" but it came from her father, and she had made only one child-support payment. She denied knowing previously that her psychological evaluation showed that she was at a high risk of abusing a child. She claimed that she was working on step three of a twelve-step program, not an AA/NA program, and she was not sure what her first two steps were.

*Arguments on Appeal*

■ Timmons first points to the circuit court's oral finding, pronounced at the end of the termination hearing, that she had "on-going drug ... primarily drug issues" that would result in risk of both psychological and physical harm to the child if she were returned to Timmons. She argues that she had remedied her drug problem, as shown by her completion of an out

patient treatment program and by the lack of positive drug screens for the year preceding this final hearing. She disputes the court's written finding that she lacked reliable means of transportation. She argues that her ability to provide a safe and stable home could not be proven by her failure to complete the case plan regarding drug issues and transportation, or by her subsequent arrests, failure to pay child support, or failure to complete counseling. She concludes that she remedied the issues that caused the removal of her child.

Evidence showed that separate drug tests by DHS and Timmons's probation officer were positive for methamphetamine in the days before the termination hearing. She testified that she did not complete inpatient drug treatment, had not attended a recognized treatment program, and did not know the early steps of the program she claimed to be working on. The trial court noted that Timmons left recommended residential treatment both times she entered it and that she had positive drug screens after she completed an out-patient program. Issues of credibility regarding Timmons's use of drugs and other findings about which she complains were up to the trial court. In resolving the clearly erroneous question, we give due regard to the opportunity of the trial court to judge the credibility of witnesses. *Moore v. Ark. Dep't of Human Servs.*, 95 Ark.App. 138, 234 S.W.3d 883 (2006).

At the time of the termination hearing, Timmons's child had been out of her care and custody for more than seventeen months, and Timmons's conduct continued to raise concerns about her ability to protect the child and meet the child's needs. We find no clear error in the court's determinations that Timmons had not remedied the conditions that led to the removal of her child, and that these factors had a potential risk of harming the child should she be returned to Timmons.

Affirmed.

VAUGHT, C.J., and GLOVER, J., agree.