2010 Ark. App. 608

Shanda ALLEN, Appellant

v.

ARKANSAS DEP'T OF HUMAN SERVICES, and Minor Child, Appellees.

No. CA 10–304.

Court of Appeals of Arkansas.

Sept. 15, 2010.

Deborah Ruth Sallings, Little Rock, for appellant.

Jo Ellen Carson, Fort Smith, Tabitha Baertels McNulty, Little Rock, for appellee.

WAYMOND M. BROWN, Judge.

Shanda Allen appeals from the termination of her parental rights to her daughter, A.L., who was born on November 14, 2007. We affirm.

DHS took emergency custody of A.L. on June 18, 2008, when her parents were arrested on drug charges.[1] The police found a drug pipe and hypodermic needles in the home and methamphetamine on the father. Appellant was arrested for obstruction of justice and possession of drug paraphernalia. The father's drug test was positive for amphetamines, methamphetamine, and marijuana. The affidavit supporting DHS's petition for emergency custody stated: "DCFS worker observed that Shanda Allen behaved irrationally, crying

---

1. Although the child's father's parental rights were also terminated in this proceeding, he does not join in this appeal.

and arguing with the worker and law enforcement agents. Worker also observed Ms. Allens [sic] having difficulty keeping her eyes open and slurring her speech when questioned." Appellant did not appear for the drug test requested by DHS. The court ordered A.L. placed in DHS's custody on June 23, 2008, and entered a probable-cause order the next month. Because the parents raised the issue of the child's Indian heritage, the court directed that the required notice be given to the Cherokee Nation of Oklahoma.

Appellant did not appear at the adjudication hearing held on August 14, 2008, although her attorney was present. Salena Whitekiller–Wynn, a child welfare specialist, appeared on behalf of the Cherokee Nation. The court continued A.L.'s custody with DHS; set reunification as the goal; and directed appellant to submit to drug testing before visitation at the DHS office. The court also ordered appellant to complete parenting classes; to maintain stable and appropriate housing and income; to submit to a psychological evaluation and complete any recommended counseling; to submit to a drug/alcohol assessment and complete any recommended treatment; to obtain reliable transportation; to visit regularly; and to submit to random drug screens.

For the second time, appellant was charged with possession of drug paraphernalia on August 29, 2008. The criminal division of the circuit court in Sebastian County sentenced appellant to ten years with eight years suspended. Appellant was permitted to avoid prison by participating in drug court and submitting to inpatient rehabilitation for her drug addiction. In December 2008, she entered Gateway. A week later, she was given a six-hour pass to see her grandmother at Christmas; however, she went out with friends, did drugs, and did not return to Gateway.

Appellant did not appear at the review hearing held on January 15, 2009. In the following order, the court stated that the concurrent goals of the case would be reunification and termination with adoption. It found that appellant had failed to comply with the case plan and court orders and had made no contact with DHS. It ruled that appellant could have no visitation until she appeared before the court.

After appellant was arrested in March 2009, she was incarcerated in a regional correctional facility, where she began receiving drug rehabilitation. Appellant appeared at the permanency-planning hearing held on May 28, 2009. In the resulting order, the court stated:

7. The Court finds that the mother has failed to comply with the case plan and orders of the Court. She is presently incarcerated and therefore lacks stable, appropriate housing, she has no income, employment or transportation, has not completed parenting classes, has not successfully resolved her criminal charges and has not visited the juvenile since 07/13/08. The mother testified that she had been convicted of possession of drug paraphernalia and that she received a sentence of 10 years suspended in the ADC and 2 years of drug court. The Court finds that the mother did enter residential drug treatment on 12/18/08 pursuant to her sentence, but that she ran from the program during a Christmas pass and that she was then arrested in LeFlore County, OK on 03/20/09 on a Felony FTA warrant and that she has been incarcerated since, presently being housed in a Regional Punishment Facility in Washington County.

DHS filed a petition for termination of appellant's parental rights on July 8, 2009.

The court held a hearing on the petition on October 30, 2009, which appellant attended with her attorney. The attorney ad litem recommended termination and adoption. Appellant; Ms. Whitekiller–Wynn; and Ceci Cade, the case worker, testified. Appellant testified about her progress since being incarcerated, such as attending parenting classes; participating in the drug rehabilitation program; attending anger-management classes; working on her GED; working a twelve-step program; and becoming drug-free. She acknowledged the long duration and severity of her drug addiction and expressed her regrets over her former way of life. She stated that she anticipated being released in January 2010 to her grandmother's home, which, she conceded, was "totally inappropriate" for her daughter. She was not sure, but thought that it might take an additional three months to obtain a home, a job, and transportation. She acknowledged that her driver's license had been suspended; that she had not followed the case plan before she was incarcerated; and that she had not seen A.L. since July 2008.

Ms. Whitekiller–Wynn testified that the child could be subject to potentially serious emotional or physical harm if returned to appellant. She stated that, even though appellant was aware of her drug problem, she was "absolutely incapable" of meeting A.L.'s needs. She said that it would be unfair to make A.L. remain in DHS's custody six additional months after appellant's release and that it would be inappropriate to risk her remaining there while appellant was on parole and in jeopardy of being returned to prison to finish her ten-year sentence. Ceci Cade recommended that appellant's parental rights be terminated. She said that appellant had visited with A.L. only three times and had last seen her in July 2008. Ms. Cade estimated that it would take appellant another six months after her release to obtain a job and housing.

At the conclusion of the hearing, the court stated:

The mother has not complied with the Case Plan. She's never had stable and appropriate housing, employment or income, her driver's license is suspended, so she would have to get that reinstated. She's not at this point completed drug treatment, although the Court is cognizant of the fact that she is in a treatment program through the Department of Corrections [sic] at this time and is working on that. She is currently taking parenting classes which will run for the duration of the time she's incarcerated. The mother did not visit on a regular basis, she only visited three times; has not seen the child in over a year. . . .

The Court finds that there is very little likelihood that either parent could comply with the requirements of the Court Order and Case Plan within a reasonable time as reviewed from the child's standpoint. The mother's testimony earlier was that she's going to be released; it will be some time in January, . . . which is almost three months. Even three months after that for the mother to get some housing and employment, we're talking about another six months, absolute minimum. At that time, the child would have been out of the mother's custody for twenty-four out of thirty months. So, from looking at it from the child's viewpoint I don't think anything could be accomplished within a reasonable time. I think there is a substantial risk of harm that could occur to the child if returned to either parent, and especially to the mother at this time. The mother is maintaining sobriety at this point, but the only time she's maintained sobriety has been when she's been incarcerated.

The court granted DHS's motion to terminate appellant's parental rights, stating in its order:

2. The Court finds that the Department has proven beyond a reasonable doubt that: it has an appropriate permanency plan for the juvenile, namely adoption; and that it is in the best interest of the juvenile that this Petition be granted. The Court finds that the Department made active efforts to prevent the breakup of the Indian family. The Court finds that there has been qualified expert testimony today from a representative of the Cherokee Nation of Oklahoma. The Court finds that the juvenile is likely to be adopted and continued custody with the parents would cause the juvenile serious emotional or physical harm.

The court also found that DHS had proven, beyond a reasonable doubt, grounds under Arkansas Code Annotated section 9–27–341(b)(3)(B)(i)(a) (Repl.2009), because the child had been in foster care for seventeen months and appellant had not corrected the conditions that caused removal. The court described appellant's noncompliant behavior throughout this proceeding:

3. The mother was arrested at the time the juvenile was placed in foster care and charged with Obstruction of Governmental Operations and Possession of Drug Paraphernalia. As a result of those charges, the mother was sentenced to a 10 year ADC commitment with 8 years suspended and 2 years of drug court. She was ordered to begin a 42 day stay in a residential drug treatment facility on 12/18/08 as part of her drug court requirements. She stayed in the facility for one week and was then given a Christmas pass to spend with her grandmother. She testified today that she never intended to spend the pass with her family, that instead, she permanently left the treatment facility to stay with friends and that it was her intention to leave the treatment facility for the purpose of resuming her drug use. The mother was thereafter a fugitive until she was arrested in March 2009 in LeFlore County, Oklahoma. She has been continually incarcerated since that time. She has visited three times in the last 17 months and has not visited with her child at all since July 2008. The Court finds that the mother has no appropriate housing, no income, a suspended driver's license. She has not completed drug treatment, although she is presently attending a treatment program in the Department of Community Corrections [sic]. She is also attending parenting classes. The Court finds that there is very little likelihood that the mother would be able to remedy her conditions within a timeframe which is reasonable when viewed from the perspective of the juvenile. Her earliest possible release from incarceration would come in January 2010 and if she was able to remedy her conditions in a mere three months, it would still be a minimum of six months before she could begin the reunification process. The Court has grave doubts as to her ability to remedy her conditions in the minimal time possible as she has testified that she began using marijuana at age 12, alcohol at age 13 and has used methamphetamine, benzodiazepines and opiates regularly since the age of 18 and that she has only been sober while incarcerated. Given her testimony about her behavior when she was given a light drug court sentence and ordered to a treatment facility in lieu of incarceration, the Court must draw the conclusion that methamphetamine was more important to the mother than was her child.

Appellant then pursued this appeal.

Appellant contends that the trial court did not comply with the Indian Child

Welfare Act of 1978 (ICWA), codified at 25 U.S.C. sections 1901 through 1963, and that, even if it did comply with the Act, the evidence did not support one of the court's findings relevant to the Act. The ICWA was enacted to "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families."[2] The Act provides "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs."[3]

 The ICWA provides that no termination of parental rights may be ordered in the absence of a determination, supported by evidence beyond a reasonable doubt, including the testimony of qualified expert witnesses, that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child.[4] The "beyond a reasonable doubt" burden required by the ICWA is more stringent than the one imposed by the Arkansas Code. Arkansas law requires that a termination of parental rights be based upon a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of (i) the likelihood that the juvenile will be adopted if the termination

petition is granted; and (ii) the potential harm that returning the child to the custody of the parent would cause, specifically addressing the effect on the health and safety of the child.[5] There must also be a finding by clear and convincing evidence of one or more grounds under Arkansas Code Annotated section 9–27–341(b)(3)(B).[6] We review termination-of-parental-rights cases de novo.[7] We will not reverse the circuit court's finding of clear and convincing evidence unless that finding is clearly erroneous.[8] Arkansas has not applied the substantial-evidence standard of review in an ICWA case, as has been done in other jurisdictions.[9] Nor have we specified that a dual burden of proof is required in a proceeding for termination of parental rights that involves the ICWA.[10]

 Appellant argues that, in its order, the trial court did not make the necessary finding that there was proof beyond a reasonable doubt that continued custody of the child by appellant was likely to result in serious emotional or physical damage to A.L. We disagree. Judgments are construed like any other instrument; the determinative factor is the intention of the court, as gathered from the judgment itself and the record.[11] Judgments should be reviewed by looking to the judgment itself, pleadings, and any evidence presented.[12] In interpreting a lower court's order, we look to the language in which the order

---

**2.** 25 U.S.C. § 1902.

**3.** 25 U.S.C. § 1902.

**4.** 25 U.S.C. § 1912(f).

**5.** *Timmons v. Arkansas Dep't of Human Servs.,* 2010 Ark. App. 419, 376 S.W.3d 466; Ark. Code Ann. § 9–27–341(b)(3)(A) (Repl.2009).

**6.** (Repl.2009).

**7.** *Lee v. Ark. Dep't of Human Servs.,* 102 Ark. App. 337, 285 S.W.3d 277 (2008).

**8.** *See Albright v. Ark. Dep't of Human Servs.,* 97 Ark. App. 277, 248 S.W.3d 498 (2007).

**9.** *See Timmons, supra.*

**10.** *Id.*

**11.** *Bisbee v. Decatur State Bank,* 2010 Ark. App. 459, 376 S.W.3d 505.

**12.** *Id.*

is couched and whether the evidence supports the ruling.[13] The trial court began paragraph 2 of its order with "The Court finds that the Department has proven beyond a reasonable doubt that:" and then set forth two findings within the remainder of that sentence. It then made three additional findings, which can be read as continuing the "beyond a reasonable doubt" findings. Paragraph 2 of the trial court's order can easily be construed as expressly making the necessary finding that there was proof beyond a reasonable doubt that continued custody of the child by appellant was likely to result in serious emotional or physical damage to A.L.

■ Appellant also argues that, even if the order can be construed as making the required finding, there was not substantial evidence that A.L. was likely to suffer serious emotional or physical damage if she were returned to appellant. She asks us to reverse and remand with directions that she be given another six months to make parole, obtain a job and housing, and demonstrate her sobriety. We decline to do so. The evidence demonstrated that appellant has abused drugs since she was twelve, and that, even though she was fully aware that she could lose parental rights to her daughter, she did not begin to comply with the case plan or court orders until March 2009, when she was incarcerated. The child has been in foster care since June 2008, which is most of her young life, and needs a permanent home. At the time of the hearing, three months before appellant was expected to be released, she had no driver's license; had no job prospects; and had only a "totally inappropriate" home with her grandmother in which to live upon her release. There was substantial evidence that return of A.L. to appellant was likely to result in serious emotional or physical damage to the child.

Affirmed.

ROBBINS and KINARD, JJ., agree.

---

13. *Fox v. Fox,* 68 Ark. App. 281, 7 S.W.3d 339 (1999).