SLIP OPINION

Cite as 2017 Ark. App. 9

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-16-760

| | |
|---|---|
| IKE RITTER | Opinion Delivered January 18, 2017 |
| APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | [NO. JV-2015-21] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE JIM D. SPEARS, JUDGE |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

Ike Ritter appeals the order of the Sebastian County Circuit Court that terminated his parental rights to his daughter, K.R.[1] Ritter argues that the Department of Human Services (DHS) failed to plead any allegations under the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1923 (ICWA) in its termination petition and that there was insufficient evidence to support a finding that active efforts were made to prevent the breakup of the Indian family. We affirm.

In January 2015, DHS received a "health and safety request" from the Arkansas State Police in reference to the Ritter family. The police had been informed that the

---

[1] The court also terminated the parental rights of Whitney Ritter, K.R.'s mother, but Whitney is not a party to this appeal.

Ritters had recently moved to Fort Smith from Oklahoma; that in August 2014, while living in Oklahoma, two-year-old K.R. had been severely burned on her face; that an investigation had determined that the injuries were the result of maltreatment by Ritter; and that Oklahoma was in the process of filing criminal charges against him. DHS contacted K.R.'s mother, Whitney, who reported that she had been advised to keep the children away from Ritter but that she did not believe he had intentionally harmed K.R. Whitney also stated that Ritter had been the primary caregiver for K.R. and her brother, four-year-old C.S., since the family had moved to Arkansas.[2] DHS also contacted Ritter, who stated that the burns had been the result of an accident and that he had not harmed K.R.

DHS exercised a seventy-two-hour hold on the children to ensure their safety, and an ex parte order for emergency custody was granted on January 20. On January 27, DHS filed notice that the children were eligible for membership in the Choctaw Nation of Oklahoma through their mother and that ICWA would apply to the proceedings, and on February 9, the Choctaw Nation filed a notice of intervention.

In July 2015, the children were adjudicated dependent-neglected by reason of "physical abuse and neglect/failure to protect." The court found that K.R. had been physically abused by Ritter and that Whitney had failed to protect her from abuse. The court noted that Ritter had been charged with felony child abuse in Oklahoma and was presently incarcerated there. Ritter was ordered to obtain and maintain stable housing, income, and transportation; complete parenting classes and visit regularly; submit to a

---

[2] Ritter is not C.S.'s father, so C.S. is not a party to this appeal.

SLIP OPINION

drug-and-alcohol assessment and complete recommended treatment; submit to random drug screens and hair-follicle testing; submit to a psychological evaluation; and resolve his criminal charges and comply with the terms and conditions of any criminal sentence. Finally, the court acknowledged the Choctaw Nation's intervention in the matter but noted that it had not appeared at the adjudication hearing. The court "reserve[d] any ruling on further issues related to compliance with the Indian Child Welfare Act (ICWA) until further notice from the Choctaw Nation."

A review order entered in September 2015 noted that DHS had made reasonable efforts to provide family services and that Ritter had not complied with the case plan. The court found that Ritter remained incarcerated in Oklahoma while awaiting trial on the criminal charges involving K.R. In the permanency-planning order filed in February 2016, the court found that DHS had made reasonable efforts to finalize a permanency plan and that the goal of the case should be changed to adoption. The order noted that Ritter had been convicted of felony child abuse and sentenced to five years' imprisonment followed by five years' supervised probation. Also in February 2016, DHS filed a petition for termination of parental rights and alleged the following statutory grounds against Ritter: (1) twelve months/failure to remedy, (2) sentenced in a criminal proceeding for a period of time that constitutes a substantial period of the child's life, and (3) aggravated circumstances. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*, (viii), and (ix)*(a)(3)* (Repl. 2015).

The court conducted a termination hearing in April 2016. At the commencement of the hearing, DHS informed the court once again that this was an ICWA case, that DHS

had been in contact with the Choctaw Nation, and that Angela Robinson, a Choctaw Nation representative, wished to participate in the hearing via telephone.

Natasha Mantooth, the family caseworker, testified that referrals were provided to both parents at the case-plan staffing and that the parents signed the case plan. According to Mantooth, Ritter completed one hair-follicle test, which was positive for THC, but she had no record of him completing any other requirements of the case plan. She stated that he went to prison in Oklahoma around the time that the children were adjudicated dependent-neglected. She also testified that Ritter would be imprisoned until at least 2020 and that she did not think reunification with Ritter was a possibility. Mantooth agreed that there were no services that would make Ritter an appropriate placement for K.R. given the nature of the abuse that occurred. She described K.R. as a "sweet and beautiful" child who was readily adoptable. She also said that K.R. faced "great risk" if returned to Ritter, noting the "cruel" and "extreme" nature of the burns inflicted onto K.R.'s face.

Mantooth confirmed that she had been in contact with the Choctaw tribe about the efforts in this case and the services provided. She explained that K.R. had been placed with two different relatives at different points in the case, but neither of those placements was long term, and K.R. was placed in a foster home. Mantooth said that there were currently no ICWA-compliant homes in Arkansas where K.R. could be placed and that DHS was currently working toward placing the child with relatives in Oklahoma.

Angela Robinson, the Choctaw Nation representative, testified that she had reviewed the case and prepared written declarations for the court, which were admitted

SLIP OPINION

without objection. She testified that the Choctaw Nation recommended termination of parental rights with a goal of adoption. She agreed that DHS had provided active efforts for the family and opined that "active efforts have failed." In her written statement, Robinson stated that she had been in contact with DHS and had reviewed the juvenile-dependency petition, the probable-cause report, the adjudication order, and the permanency-planning order. In her opinion, "returning the children to the care of their parents would subject the children to suffer physical and emotional harm. The tribe would be in agreement with termination as to Whitney Ritter [and] Ike Ritter. . . . Active efforts were provided to prevent the breakup of this Indian family."

In May 2016, the circuit court entered an order terminating Ritter's parental rights to K.R. In that order, the court made the following findings:

> [T]he conditions that caused the juveniles' removal approximately fifteen months ago have not been remedied. Ike Ritter has been convicted of child abuse by injury for the injuries he inflicted on [K.R.]. He has been incarcerated in Oklahoma for most of the pendency of this case. Ike Ritter has been unable to complete the requirements of his case plan due to his incarceration.
> . . . .
>
> The father has been sentenced in a criminal proceeding for a period of time which would constitute a substantial period of the juvenile's life. Ike Ritter is serving a five-year sentence in the Oklahoma Department of Correction after being convicted of Child Abuse by Injury for the burns he inflicted on [K.R.]. He must serve 85% of his sentence. Ike Ritter must then serve a term of five years of probation after his release from prison. [K.R.] is two years old and Ike Ritter's earliest chance of release will be March, 2020, which constitutes a substantial portion of this child's life.
>
> The parents have subjected the juveniles to aggravated circumstances; specifically, there is little likelihood that services to the family will result in successful reunification. Ike Ritter has been convicted of felony child abuse to [K.R.]. There are no services that can be provided that will ensure that [K.R.] would be safe in Ike Ritter's care.

The court also found that termination was in the children's best interest, that the children are adoptable, and that the children would be at great risk of harm if returned to the parents. Finally, the court found that

> beyond a reasonable doubt, based on qualified expert testimony and Declarations of Angela Robinson of the Choctaw Nation of Oklahoma, that the Department of Human Services has provided remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that continued custody of the parents or Indian custodian would result in serious emotional or physical harm to the juveniles.

Ritter has timely appealed from this order.

According to the ICWA, the party seeking to terminate parental rights must satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful. 25 U.S.C. § 1912(d). Moreover, no termination of parental rights may be ordered in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child. 25 U.S.C. § 1912(f). The "beyond a reasonable doubt" burden required by the ICWA is more stringent than the one imposed by the Arkansas Code.

Arkansas law requires that a termination of parental rights be based upon a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of (i) the likelihood that the juvenile will be adopted if the termination petition is granted; and (ii) the potential harm that returning the child to the custody of the parent would cause, specifically addressing the effect on the health and safety of the child. *Timmons v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 419, 376 S.W.3d 466; Ark.

SLIP OPINION

Code Ann. § 9-27-341(b)(3)(A) (Repl. 2015). There must also be a finding by clear and convincing evidence of one or more grounds under Arkansas Code Annotated section 9-27-341(b)(3)(B).

We will not reverse the circuit court's finding of clear and convincing evidence unless that finding is clearly erroneous. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Id.*

On appeal, Ritter seeks reversal of the circuit court's order for two reasons: (1) DHS failed to plead any allegations under the ICWA in its termination petition, and (2) there was insufficient evidence to support a finding that active efforts were made to prevent the breakup of the Indian family. He does not challenge the statutory grounds for termination found by the circuit court or the court's best-interest determination.

## I. *Failure to Plead Allegations Under ICWA*

For his first point, Ritter argues that "DHS failed to plead that it was seeking to terminat[e] parental rights under the ICWA and that it was seeking to prove the required ICWA grounds. Thus, Ike was not put on notice with regards to the ICWA grounds." DHS counters that this argument is raised for the first time on appeal and that, in the alternative, the argument is unavailing because the ICWA establishes a higher standard of proof for terminations, not "grounds" for termination.

We agree that Ritter raises this argument for the first time on appeal, so it is not preserved for our review. This argument was not raised in Ritter's response to the petition for termination of parental rights or at the termination hearing. An issue must be raised and ruled on below to be preserved for appeal; issues cannot be raised for the first time on appeal to this court. *Williams v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 171, 458 S.W.3d 271. Thus, we affirm on this point.

II. *Insufficiency of the Evidence to Prove Active Efforts*

Ritter argues that DHS failed to prove beyond a reasonable doubt that active efforts were made in this case. He acknowledges that the court found, based on Angela Robinson's testimony, that DHS had fulfilled the requirements of the ICWA beyond a reasonable doubt. He asserts, however, that Robinson's testimony did not support this finding because, while she testified that DHS made active efforts, she failed to detail any facts to support that opinion.

DHS counters that "Robinson's involvement is evidence in and of itself that DHS had made active efforts to provide ICWA-tailored services." DHS also argues that the court's orders throughout the case show that multiple services were offered to Ritter and that Ritter did not take advantage of those services, in part because of his incarceration for abusing K.R. Thus, DHS contends, the record shows that DHS made active efforts to prevent the breakup of the Indian family, but Ritter failed to benefit from those services in any way. DHS also notes that Ritter offered no evidence to rebut Robinson's conclusion that active efforts had been made. In conclusion, DHS argues that the circuit court was within its province to rely on the admitted evidence and weigh it accordingly, and this

court should not second-guess that determination. *See Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 397, 242 S.W.3d 305, 308 (2006) (noting that the appellate court does not act as a "super factfinder," substituting its own judgment or second guessing the credibility determinations of the court).

We affirm. Robinson gave her informed and expert opinion that active efforts had been put forth in this case, that the active efforts failed, and that returning the children to the care of their parents would subject the children to physical and emotional harm. Robinson remained in contact with DHS and reviewed the juvenile-dependency petition, the probable-cause report, the adjudication order, and the permanency-planning order in reaching her conclusions. The circuit court was within its province to rely on this testimony in making its finding that active efforts had been made.

Affirmed.

GLADWIN and VAUGHT, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellant.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.